THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WAYNE E. ANDERSON, Defendant-Appellant.

Second District   No. 77-506

Opinion filed November 14, 1978.

Donald L. Shriver, of Rockford, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Wayne E. Anderson, was convicted of attempt (rape) in a jury trial and sentenced to four years probation, the first 90 days to be served in the Winnebago County Jail. He appeals, contending that: the in-court identification should have been suppressed on his motion; he was not proved guilty beyond a reasonable doubt; he was denied a fair trial because of prejudicial argument by the prosecutor and because of the ineffective assistance of defense counsel; and the trial court erred in denying him leave to file an amended motion for a new trial.

The charges arose out of an assault in a laundromat in South Beloit on December 14, 1976, at approximately 7:15 p.m. The victim testified that she was alone in the laundromat when someone put his hand over her mouth, put a knife in front of her face and said, "Don't do anything and

you won't get hurt. I've got a knife." He had her walk through the adjoining room through an open doorway into a hallway where the victim turned and faced the man. He pulled down her jeans and underpants; a struggle took place with the victim ending up on the floor with the attacker partly on top of her; he attempted to pull her scarf over her face but she threw it back; he took off her glasses and tossed them away. At one point during the struggle the man tried to kiss her. As she was still struggling he inserted his fingers into her vagina. Suddenly, he stopped and said, "If I leave you won't say anything"; and when she said "All right," he got up and ran off. She identified the defendant in the courtroom as her attacker.

On cross-examination the victim testified that the laundromat was well lit with fluorescent lights; that there were no lights in the hallway but that there was reflected light through the open doorway. She related that she had an opportunity to observe the individual for 5 or 6 minutes. She identified the attacker as wearing a colored long sleeved jacket and dark colored pants. She did not remember the color of his eyes but did remember that he had a sparse beard and medium length hair. She indicated there was nothing else to make him particularly distinguishable.

Defense counsel sought to impeach the victim's in-court identification by cross-examination directed to identification procedures that had taken place prior to trial. It was brought out that she had been called to the South Beloit Police Department within a week or two after the attack where she was shown a triple exposed picture of the defendant with the pictures of two other persons superimposed upon it. When shown the first picture she pointed out one of the persons in the picture and said it was her assailant. She was then shown the second picture which was a closeup of the defendant with a picture of one other person superimposed upon it and she again identified the person in the picture as her attacker. However, she said she would like to see the man in the picture in person and to hear his voice. The victim testified that she had no doubts as to the identity of the individual at that time.

It was then brought out that before the lineup could be arranged a preliminary hearing date was set which the victim attended. The State requested a continuance which was granted in order to let the victim view the defendant in a lineup. After the hearing the victim spoke with Chief LaMendola of the South Beloit Police Department outside the courtroom. He asked her if she had seen her assailant in the courtroom and she replied that she had not. She said that she had glanced at a man sitting behind her but hadn't paid much attention because he was clean shaven. At that time Chief LaMendola told her that the defendant had been sitting behind her. It was elicited that the lineup was held at the Winnebago County Jail on January 7, 1977, two days after the postponed preliminary hearing. The victim identified the defendant as her attacker. But on the way back to

South Beloit she told one of the policemen that she was unsure of her identification at the lineup and asked that she be allowed to see the pictures originally shown to her again. After viewing the pictures the following week she confirmed that the defendant was the perpetrator of the crime. The victim was asked what caused her uncertainty after the lineup and she stated that since she had had a glimpse of defendant in the courtroom it would have been impossible for her to choose someone else. Therefore, she said that she wanted a chance to see him because she had been told that he probably would have his hair cut and be clean shaven and he looked different from her view of him at the time of the attack.[1]

The defendant testified in his own defense to the effect that he had worked on the second shift on December 14, 1976, from 3:30 p.m. to 12:30 a.m. eating his lunch in the company lunch room and at no time leaving his place of employment. On cross-examination he admitted that on the night of December 16 he left his place of employment for approximately two hours without being discovered by his employer. He did not tell anyone he was leaving nor punch out on the clock.

■■ When the impropriety of an out-of-court identification is established, as it was here, it became the burden of the State to show by clear and convincing evidence that the witness' identification of the defendant in-court had an independent origin and was not influenced by the unnecessarily suggestive procedure out-of-court. (*People v. Patrick*, 53 Ill. 2d 201, 206 (1972); *People v. Blumenshine*, 42 Ill. 2d 508, 513 (1969); *People v. Allen*, 60 Ill. App. 3d 445, 448 (1978).) In *Manson v. Brathwaite*, 432 U.S. 98, 114-15, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253 (1977), the United States Supreme Court concluded that "reliability is the linchpin in determining the admissibility of identification testimony"; and the factors to be considered include the opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description, the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation; with the effect of the suggestive identification to be weighed against these factors. See also *People v. Davenport*, 49 Ill. App. 3d 130, 132 (1977).

On this record the trier of the facts could conclude that the complaining witness had a sufficient opportunity to view the defendant at the time of the crime based upon her testimony that she was with him for a period of 5 or 6 minutes, facing him during that time under adequate lighting and with the additional circumstances that at one time the assailant was half on top of her, and at another time approached her face and asked

---

[1] The same testimony was before the court at the pretrial motion to suppress which the trial court granted. However, the trial judge refused to bar the complaining witness from testifying in court as to the identification at the time of the alleged occurrence based upon her observations over what the court considered a sufficient period of time in good lighting conditions.

her to kiss him. It is also clear from the circumstances that the complaining witness was not a casual or passing observer, but was paying close attention to the features of her attacker. In addition, the description the victim gave the police was detailed and unimpeached. She testified as to what her assailant was wearing, his hair color and the style and extent of his facial hair. Further, the time between the crime and the confrontation was short. The victim identified the person in the photographs some six days after the incident and she identified the defendant in court approximately six months after the incident. A detailed description of the assailant was given within minutes after the attack.

The only possible question is as to the level of certainty that the witness possessed. When first shown the picture on December 20, 1976, she stated that "[t]his is him," but did state she would like to see him again in person and hear his voice. She later explained that she just felt she should see him in person before having to face him in open court. By the time the opportunity arose to view the defendant in person his hair had been cut and his beard shaved, causing her some doubts about his identity even after she had picked him out in a lineup at the Winnebago County Jail. However, in trial her identification was positive and she was sure the defendant was her assailant. She was thoroughly cross-examined as to her previous statements of uncertainty and her explanation was given credibility by the jury.

■■ Applying the standards of *Manson v. Brathwaite* and weighing them against the "corrupting effect of the suggestive identification itself" (432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253) we must conclude that the State satisfied its burden to show by clear and convincing evidence that the witness' identification of the defendant had an independent origin.

We then consider defendant's contention that he was deprived of a fair trial.

Principally defendant urges that there was no proof of intent to commit the crime of rape. We cannot agree. The defendant took several steps toward the act of intercourse, leading the complaining witness away from the bright lights, removing her pants, getting half on top of her and inserting his finger in her vagina. The jury could easily have concluded from this encounter that he did intend to have intercourse. See *People v. Triplett*, 46 Ill. 2d 109, 112 (1970).

Defendant also argues that improper argument by the State's Attorney was prejudicial.

■■ Only one portion of the claimed improper argument of the prosecutor was objected to. The State's Attorney urged the jury to bring back a verdict of guilty and to divorce itself "from the fact that our courts are permissive." The court immediately struck the remarks from the record on its own motion telling the jury that the question of

permissiveness was not in the case. Ordinarily, when a jury is promptly directed to disregard the prosecutor's comment any alleged error is cured unless overriding prejudice can be shown. (*People v. Hampton*, 44 Ill. 2d 41, 46 (1969).) Here, any possible prejudice from the argument did not amount to reversible error in our view. See *People v. Anderson*, 48 Ill. 2d 488, 497 (1971); *People v. Swets*, 24 Ill. 2d 418, 423 (1962).

■■ Other portions of the argument now complained of were neither objected to at trial nor included in the post-trial motion, but we are urged to examine the argument under the "plain error rule." (Ill. Rev. Stat. 1975, ch. 110A, par. 615.) Defendant bases his contention, that the argument was prejudicial and therefore was an error which involved substantial rights, essentially on the prosecutor's reference that defendant's getting a shave and a hair cut was an attempt to disguise himself and an admission of guilt; that defendant was a "Little Lord Fauntleroy" and "a liar"; that defendant had it "in his mind" to rape the victim; and the prosecutor's comment to the jury that he was their "first assistant" and therefore would not tell the victim to identify the defendant. As to the reference to identity, the prosecutor's comment was a legitimate response to the attack by the defense counsel in his argument suggesting that the prosecution may have said to the victim that if she didn't identify defendant they wouldn't have a case. (See *People v. White*, 52 Ill. App. 3d 517, 522 (1977).) As to the other remarks of the prosecutor here referred to or in the record we conclude that they did not interfere with a fair trial. See *People v. Smothers*, 55 Ill. 2d 172, 176 (1973).

■■ Defendant has also strongly urged that he was denied effective assistance of counsel. He was represented by counsel of his own choosing with experience in the practice of criminal law but licensed to practice in Wisconsin rather than Illinois (and was permitted on motion to appear for defendant in the trial court). A number of the instances alleged to support the contention of an inadequate representation had to do with motions which were made by counsel in behalf of defendant after suggestions by either the court or the State's Attorney but which were in fact made and had no prejudicial effect on the outcome of trial. Another complaint, that defense counsel failed to object to inflammatory or improper remarks by the State's Attorney during closing argument had previously been discussed and as we have noted did not deprive the defendant of a fair trial. The other instances involved the extent of cross-examination of the complaining witness, the failure to object to photographs and the introduction of defense photographs claimed to be prejudicial as showing defendant's prior arrest in Beloit, and similar claims that the defense counsel did not present the best defense possible. From a reading of the entire record we are satisfied that counsel put on an adequate although

unsuccessful defense and that substantially all of the alleged acts of incompetency complained of were matters of trial tactics. *People v. Witherspoon*, 55 Ill. 2d 18, 21-23 (1973). See also *People v. Washington*, 41 Ill. 2d 16, 21 (1968).

It is clear that the standard used to judge competency when counsel is retained is whether his representation was of such low caliber as to amount to no representation at all or will reduce the court proceedings to a farce or sham. (*People v. Torres*, 54 Ill. 2d 384 (1973); *People v. Pangburn*, 41 Ill. App. 3d 781 (1976).) Defendant urges the court to adopt a uniform standard for both retained and appointed counsel but we do not reach this issue since, in our view, under either standard the claim of incompetent counsel has not been sustained.

Finally, we are not persuaded by defendant's argument that the trial court erred in failing to grant his motion for leave to file an amended motion for a new trial. A motion by retained trial counsel cited the in-court identification and the permissiveness portion of the State's Attorney's argument as grounds. The motion was denied on July 21, 1977. Defendant was sentenced on August 4, 1977, and 15 days later the present counsel filed notice that he would ask leave to file a motion for a new trial. The motion was denied by the trial court and we think properly so. Motions for a new trial or to arrest a judgment must be filed within 30 days following the return of a verdict in accordance with statute. (Ill. Rev. Stat. 1977, ch. 38, pars. 116—1, 116—2.) Upon the entry of the verdict or the finding of guilty the 30-day provision has been held to impose a mandatory requirement. (*People v. Dzielski*, 130 Ill. App. 2d 581, 586 (1970).) Moreover, it is apparent in this case that the defendant has not been prevented from arguing all of the matters which he intended to urge as error in the amended motion and therefore has not been prejudiced.

We affirm the judgment of the trial court.

Affirmed.

RECHENMACHER and NASH, JJ., concur.