THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LINDA TALACH *et al.*, Defendants-Appellants.

Second District   Nos. 82—9, 82—10 cons.

Opinion filed April 25, 1983.

Lawrence Wolf Levin and Steven R. Decker, both of Chicago, for appellants.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendants Linda and Milton Talach were found guilty in a jury trial of retail theft not exceeding $150 (Ill. Rev. Stat. 1979, ch. 38, par. 16A—3). Subsequently, Linda Talach was sentenced to one year probation, the last 30 days to be served in the county jail, and a $500 fine, and Milton Talach was sentenced to one year probation, 180 days' imprisonment as a condition of probation, and a $500 fine. Both defendants appeal and raise the following issues for our review: (1) whether the trial court abused its discretion by striking defendants' motions for a new trial and arrest of judgment not filed within 30 days of the judgments entered on the verdicts; (2) whether the trial court erred in denying defendants' motion to suppress evidence; (3) whether the defendants were proved guilty beyond a reasonable doubt; (4) whether the trial court erred in admitting evidence at trial unrelated to the crime charged; and (5) whether the trial court erred in the sentencing hearing and abused its discretion in imposing sentence.

Prior to trial, the defendants filed motions to suppress evidence and to quash their arrests. Milton Talach testified at a hearing on these motions that at approximately 1:30 p.m. on December 4, 1980, he was driving with his wife in his 1979 blue and white Chevrolet Blazer. He was stopped by police officers, though he was not breaking any law. While he and his wife were standing by a police squad car, five to 10 feet behind the Blazer, an Officer Baker opened the back door of the Blazer without his permission. He said that his wife did not help Officer Baker open the door to the Blazer. He and his wife were then arrested, the Blazer was towed away, and some grocery items of theirs were taken.

Officer Douglas W. Baker of the Wheaton police department testified that he arrived at the scene in response to a radio call. Officers from the village of Carol Stream had already stopped a vehicle which had been described in a radio dispatch as one used in a retail theft. He had been previously told that a man and a woman driving in a blue and white Blazer with a certain license number were wanted in connection with the theft of nine jars of Taster's Choice coffee. He saw the defendants standing behind a blue and white Blazer. The license number of the Blazer matched the one he had received. He looked through the back window of the Blazer and saw several shopping bags with the tops of what he believed to be coffee jars sticking out.

He then placed the defendants under arrest and gave them their *Miranda* warnings. Upon questioning the defendants he determined

that they were husband and wife and that the Blazer was registered to Milton Talach who refused to give Officer Baker permission to search the Blazer. Linda Talach told Officer Baker that she did not care whether he searched the vehicle. He looked at the "materials" in the Blazer. He then placed the defendants in his vehicle and had the Blazer towed because it was in a no parking zone. Approximately 15 or 20 minutes later he conducted an inventory search of the Blazer at the police station. He took the property, which was supposedly stolen from a Jewel store, and placed it in the police inventory.

The trial court denied both motions finding that the police officers had the right to make a stop given the information that there had been a crime and the description of the vehicle and its occupants; that there was sufficient evidence to form a reasonable basis for the officers to believe that the crime was committed by the defendants; that Linda Talach did not have the authority to consent to a search of the vehicle; and that based on all this information and what Baker saw through the window he was justified in searching the Blazer.

The day of the trial, on defendants' motion, the trial court limited the State to introducing nine jars of Taster's Choice coffee, the amount alleged in the complaint, out of the total number of items seized from the Blazer, which included seven shopping bags containing another 103 jars of Taster's Choice coffee, three shopping bags containing 119 jars of Pacific Pearl Snowcrab and an unstated number of shopping bags containing 43 cans of Pillar Rock Fancy Red Salmon and 20 cans of Bumble Bee Red Salmon. All the items had Jewel store labels on them.

The court later modified this ruling, on the State's motion, to allow the State to introduce one shopping bag containing 16 jars of Taster's Choice coffee to show the way they were packed.

At trial, Mary Havarilla, a Jewel Food Store security guard, testified that at approximately 1 p.m. on December 4, 1980, she observed the defendants, with whom she had previously been acquainted, enter the Main Street Jewel Food Store in Wheaton, take a grocery cart, and proceed directly to the coffee aisle. She spoke to the store manager, Barry Eisfeldt, who went to the far end of the coffee aisle. Havarilla stood in the same aisle as the defendants, approximately eight to 10 feet away. She watched them stop opposite the shelf where Taster's Choice coffee was displayed. They stood at opposite ends of the shopping cart. Milton Talach took nine jars of Taster's Choice coffee with red labels off the shelf and placed them in the cart. Linda Talach then placed the jars in a brown plastic travel bag which was sitting in the cart. There may have been one or two items in the

cart at that time but she did not recall. Linda Talach then zipped up the bag, put it on her shoulder, and walked out of the aisle and directly out the front door of the store without passing through the check-out line.

Less than a minute later Milton Talach left the aisle. As he walked up the aisle, Havarilla, who was then at the end of the aisle, moved over into the next aisle. He passed her at a distance of eight feet. He went to the check-out line and stood there for a second or two. She did not recall if there were any items in the cart at this time. He then left the cart and walked out of the store without going through the check-out lines.

After Milton Talach left the coffee aisle but before he left the store, Havarilla observed, through the front window of the store, Linda Talach get into the passenger side of a blue and white Blazer. She said that Milton Talach left the store approximately 30 seconds after Linda Talach did. Havarilla and Eisfeldt followed Milton Talach out the front door. Milton got into the Blazer. Havarilla went to the passenger side and displayed her badge. Eisfeldt stood behind the Blazer. The Blazer was backed up quickly. Eisfeldt jumped out of the way. The Blazer was backed all the way out of the street and then driven away quickly. She saw that the Blazer had an Illinois license plate, number SMR 167.

She identified two brown plastic travel bags, which had been seized by Officer Baker from defendants' Blazer, as similar to the one Linda Talach carried out of the store.

Havarilla admitted that her written report of the incident did not indicate the color, brand or number of the items taken. She testified that, under store policy, she is to stop suspected shoplifters after they leave the store unless they pass through the check-out line and pay for some items, but not others, in which case she is to stop them after they pass through the check-out and before they leave the store.

Barry Eisfeldt's testimony was substantially the same as Havarilla's. Although he testified that Havarilla was at the far end of the aisle when he observed Milton Talach taking the jars off the shelf, he did not see her there while the defendants were taking the coffee even though he could see past them. On direct examination he testified that Milton Talach took the jars off the shelf and placed them in the travel bag himself; but on cross-examination he explained that Linda Talach helped him place them in the bag. He saw Linda Talach go to the beverage aisle before leaving the store. He thought there were some items left in the cart after Milton left the coffee aisle, but he could not remember what they were.

Eisfeldt identified the label on one of the jars of coffee in the shopping bag, which had been admitted into evidence, as a distinctive type of label used only by Jewel stores. He said that it was impossible to tell from which Jewel store the items came. Defense counsel showed him a jar from the shopping bag which had the green label of Taster's Choice decaffeinated coffee on it. He said that he did not see the defendants take any jars of decaffeinated coffee.

Officer Baker's trial testimony was similar to his testimony at the suppression hearing. He identified the shopping bag and two brown plastic travel bags as the ones which he had found in the Blazer.

The trial court admitted into evidence the two travel bags and the shopping bag with 16 Taster's Choice jars over the defendants' objections.

The defendants rested without putting on any testimony.

The first issue presented is whether the trial court properly struck the defendants' motions for new trial and arrest of judgment which were filed on November 30, 1981. Judgment on the verdicts had been entered on October 6, 1981. In striking the post-trial motions, the trial court stated it had no authority to extend the time for filing such post-trial motions beyond the 30 days following the entry of a verdict as provided in sections 116—1 and 116—2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, pars. 116—1, 116—2).

■■ Sections 116—1 and 116—2 provide for a fair and orderly procedure by which post-trial motions in criminal cases must be filed in the trial court within 30 days following the entry of a finding or the return of a verdict. (*People v. Sweeny* (1978), 57 Ill. App. 3d 879, 884-85, 373 N.E.2d 663.) Although it has been held that the limitation as to time is mandatory (*People v. Anderson* (1978), 65 Ill. App. 3d 783, 789, 382 N.E.2d 866; *People v. Dzielski* (1970), 130 Ill. App. 2d 581, 586, 264 N.E.2d 426), and that such motions not timely filed are properly denied (*People v. Gray* (1981), 96 Ill. App. 3d 757, 762, 422 N.E.2d 45; *cf. People v. Colletti* (1971), 48 Ill. 2d 135, 137, 268 N.E.2d 397), the time limitation applies to the defendant. The trial court still retains jurisdiction after 30 days from the entry of the verdict because the final judgment in a criminal case is the pronouncement of sentence. *People v. Allen* (1978), 71 Ill. 2d 378, 381, 375 N.E.2d 1283.

■■ Thus, there is no jurisdictional bar to a trial court entertaining a post-trial motion not timely filed within 30 days as prescribed in sections 116—1 and 116—2, but prior to imposition of sentence. Here, defendants' post-trial motions were filed prior to the sentencing hearing and pronouncement of sentence and the record reveals there may

be some basis for confusion on the part of the defendants' counsel because the trial court stated defendants could present motions on the same date as the sentencing hearing. Under these circumstances, we choose to address the issues raised in the post-trial motions which are presented to us on appeal. See *People v. Walsh* (1981), 101 Ill. App. 3d 1146, 1149, 428 N.E.2d 937; *People v. Velillari* (1980), 84 Ill. App. 3d 333, 340, 405 N.E.2d 466; *People v. Sweeny* (1978), 57 Ill. App. 3d 879, 885, 373 N.E.2d 663.

Next, the defendants maintain that the two warrantless searches of the Blazer, one at the site of the stop and the other at the Wheaton police station 15 minutes later, were improper since they were not incident to defendants' arrests, no exigent circumstances existed, and defendants had not given their consent.

Although defendants filed a motion to quash the arrest and a motion to suppress evidence in the court below, they have not specifically raised as error on appeal the trial court's ruling on probable cause to arrest the defendants. Nonetheless, it is clear that the arrests were made upon probable cause to believe defendants had committed an offense. (See Ill. Rev. Stat. 1979, ch. 38, par. 107—2(c).) Officer Baker had received a radio communication that a man and a woman were wanted for retail theft; he had been given a description of the vehicle and the license plate numbers both of which matched that of the Blazer; and he had been informed that nine jars of Taster's Choice coffee had been taken from a Jewel store in Wheaton. Before placing the defendants under arrest, Officer Baker, while standing outside the vehicle, observed shopping bags lined up in the back of the vehicle and inside the shopping bags he saw tops of coffee jars. Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228.) Clearly, under the circumstances present here, Officer Baker had probable cause to believe defendants had committed a crime. *People v. Lippert* (1982), 89 Ill. 2d 171, 180-81, 432 N.E.2d 605.

■ Following the arrests of the defendants at the site where the Blazer was stopped, the officers were entitled to conduct a warrantless search of the vehicle under the "automobile exception" to the fourth amendment warrant requirement as there was probable cause to believe that it contained stolen articles that the officers could lawfully seize. (*Chambers v. Maroney* (1970), 399 U.S. 42, 48, 26 L. Ed. 2d 419, 426, 90 S. Ct. 1975, 1979; see *People v. Clark* (1982), 92 Ill.

2d 96, 440 N.E.2d 869.) Thus, the search and examination of the grocery bags in the Blazer at the scene was proper. The circumstances present here provided not only probable cause to arrest, but also probable cause to seize the incriminating items in the vehicle without a warrant. (*Colorado v. Bannister* (1980), 449 U.S. 1, 66 L. Ed. 2d 1, 101 S. Ct. 42.) The fact that the officers delayed for 15 minutes a more complete search and the eventual seizure of the items until the vehicle was safety at the station did not diminish the justification and right to search the vehicle. (*Colorado v. Bannister; Texas v. White* (1975), 423 U.S. 67, 46 L. Ed. 2d 209, 96 S. Ct. 304; *Chambers v. Maroney; People v. Beil* (1982), 110 Ill. App. 3d 291, 293-94, 442 N.E.2d 291.) Since we affirm the trial court's denial of the motion to suppress evidence on the basis of the "automobile exception" to the warrant requirement, we need not discuss the State's alternative bases, of search incident to arrest and inventory search, for upholding the trial court's decision.

The defendants also maintain that the State's evidence was not sufficient to prove them guilty beyond a reasonable doubt. More specifically, they contend that the testimony of the two eyewitnesses to the theft, Mary Havarilla and Barry Eisfeldt, was conflicting and contradictory regarding which defendant actually placed the coffee jars in Linda Talach's shoulder bag, the time sequence and route by which the defendants left the Jewel store, and what other items were in the shopping cart. They further contend the State failed to prove that the coffee jars later recovered from the defendants were the items removed from the Jewel store in question. These arguments are meritless.

■ From our review of the record, we conclude that Havarilla and Eisfeldt agree, in detail, on all the relevant occurrences at the store. Both witnesses observed Milton Talach take the coffee jars off the shelf, both witnesses testified Linda Talach put them in the shoulder bag although Eisfeldt stated Linda Talach helped Milton Talach put them in the bag, both witnesses observed the defendants leave the store without paying for the items, and both witnesses testified that when they approached the Blazer parked outside the store which the defendants entered, Havarilla displayed her badge and the defendants hurridly left the scene. Any discrepancies between the testimony of Havarilla and Eisfeldt were minor and not material. Minor inconsistencies in the testimony of the State's witnesses do not destroy the credibility of these witnesses, and any variations in testimony were for the trier of fact to weigh. (*People v. Jordan* (1967), 38 Ill. 2d 83, 87-88, 230 N.E.2d 161; *People v. Rodgers* (1978), 58 Ill. App. 3d 719,

722, 374 N.E.2d 721.) A jury's verdict of guilty will not be disturbed unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendants' guilt. (*People v. Lewis* (1981), 88 Ill. 2d 129, 151, 430 N.E.2d 1346.) In our judgment, the evidence of guilt here, if believed by the jury, was ample. The fact that the State's witnesses could not positively state that nine of the jars of Taster's Choice coffee which bore Jewel price markings found in the Blazer came from the Jewel store in question is not fatal to the State's case. In cases where the sufficiency of the identification of stolen property is an issue, the trier of fact makes the ultimate determination of weight and credibility. (*People v. Weaver* (1959), 18 Ill. 2d 108, 113, 163 N.E.2d 483; *People v. Mertens* (1979), 77 Ill. App. 3d 791, 796-97, 396 N.E.2d 595.) Some property is of such a character that it cannot be positively identified, and courts have found it sufficient where the owner testified that the articles found in possession of a defendant are identical to those stolen, even though he could not positively say that they are in fact the property of the person from whom they were taken. (*People v. Mertens.*) The evidence in this case establishes the guilt on all elements of the offense of both defendants beyond a reasonable doubt.

Defendants contend that the trial court erred when it allowed into evidence a total of 16 jars of Taster's Choice coffee, all contained in the same shopping bag found in the Blazer, where the State's complaint charged and its evidence showed only nine jars of Taster's Choice coffee were taken. The defendants do not claim the extra seven jars of coffee which also bore Jewel markings were evidence of or inferred commission of collateral crimes (see, *e.g., People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238), but instead argue that this evidence was irrelevant and "confused the jury and prevented it from fairly assessing the facts presented to it, and sufficiently prejudiced the defendants in the jury's eyes to warrant a new trial."

We observe that on the defendants' pretrial motion the trial court prevented the State from introducing evidence of numerous other shopping bags, found in the Blazer, containing other grocery items, *i.e.*, other glass jars of Taster's Choice coffee and many cans of crab and salmon, all with Jewel labels. This ruling effectively prevented the State from using that evidence, possibly evidence of other crimes, to demonstrate knowledge, intent, motive, design, plan, or identification relating to the crime charged. (See *People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238.) Nevertheless, the trial court did allow admission of the seven other jars of Taster's Choice coffee because they were contained in the same shopping bag as the nine al-

leged to have been stolen and showed how the 16 jars were all packaged together.

■ Defendants agree that the admission of evidence is a matter largely within the discretion of the trial court, and its decision should not be reversed unless such discretion is abused and prejudice to the defendant results. (*People v. Franklin* (1981), 93 Ill. App. 3d 986, 993, 418 N.E.2d 155; *People v. Ford* (1980), 83 Ill. App. 3d 57, 67, 403 N.E.2d 512.) Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. (*People v. Monroe* (1977), 66 Ill. 2d 317, 322, 362 N.E.2d 295.) The manner in which all 16 jars of coffee were neatly stacked together in one shopping bag in the Blazer may tend to show a knowing theft rather than an inadvertent taking without paying. It would also show a transfer of the nine jars of coffee from Linda Talach's shoulder bag to a shopping bag, perhaps as a method of concealment of the crime by commingling with other jars of coffee. In view of all the factual circumstances in the record and the ruling preventing admission into evidence of all the other bags of items found in the Blazer, we find no abuse of discretion in the ruling allowing seven other jars of coffee contained in the same shopping bag into evidence. Defendants have neither claimed this was evidence of other crimes, nor articulated any specific prejudice. See *People v. Houck* (1977), 50 Ill. App. 3d 274, 287, 365 N.E.2d 576.

Finally, defendants contend the trial court abused its sentencing discretion when it imposed jail sentences on both defendants as a condition of probation rather than granting probation without such a condition. They also maintain the trial court committed error at the sentencing hearing by not affording both defendants an opportunity to make a statement in their own behalf, by failing to consider certain statutory factors in mitigation of a sentence of imprisonment, and by considering Milton Talach's six previous supervision dispositions.

■ Section 5—4—1(a)(5) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(a)(5)) provides that at the sentencing hearing the trial court shall "afford the defendant the opportunity to make a statement in his own behalf." However, where counsel has spoken for defendant at the sentencing hearing and defendant has not requested an opportunity to speak, the failure of the trial court to offer defendant a right of allocution is a formal, but not reversible error. (*People v. Hobbs* (1981), 86 Ill. 2d 242, 244, 427 N.E.2d 558; *People v. Yettke* (1981), 95 Ill. App. 3d 365, 370-71, 420 N.E.2d 194; *People v. Miller* (1979), 72 Ill. App. 3d 416, 419-20, 390 N.E.2d

971.) Moreover, at the mitigation stage of the proceeding, the record indicates that the trial court generally asked if there was anything further from either side. Accordingly, we find no reversible error.

■ Defendants also contend that the record does not indicate that the trial court, in pronouncing sentence, considered any of the factors in mitigation of a sentence of imprisonment listed in section 5—5—3.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.1). The trial judge need not recite, and assign a value to, each fact presented in evidence at the sentencing hearing (*People v. Meeks* (1980), 81 Ill. 2d 524, 534, 411 N.E.2d 9), and only substantial compliance with section 5—6—1 (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1) is required when refusing to sentence a defendant to probation or conditional discharge. (*People v. Kuesis* (1980), 83 Ill. 2d 402, 409-10, 415 N.E.2d 323.) Where defense counsel argues factors in mitigation, we must assume the trial judge gave consideration to them in imposing sentence. (*People v. Bruno* (1979), 68 Ill. App. 3d 768, 775, 386 N.E.2d 550.) Defendants have made no affirmative showing that the trial court failed to consider factors in mitigation of sentence. (See *People v. Stephens* (1980), 83 Ill. App. 3d 199, 202, 403 N.E.2d 794.) The record reveals that the trial court read the presentence report extensively, entertained arguments by counsel, and stated the reasons for his imposition of sentence. We find no error.

Lastly, defendant Milton Talach maintains that the trial judge when pronouncing sentence indicated that he considered at least 10 previous arrests which, the defendant argues, was error since six of the arrests resulted in dispositions of supervision. The presentence report reveals that Milton Talach was arrested 10 times from 1975 through January 1980 and was given supervision on six occasions and placed on probation or conditional discharge and fined on the other four arrests. None of these were mere arrests, and five of the six supervision dispositions were imposed subsequent to two prior convictions which resulted in sentences of one year conditional discharge and two years' probation. Defendant cites *People v. Calvert* (1981), 100 Ill. App. 3d 510, 426 N.E.2d 1218, as authority that a trial judge may not consider, in sentencing a defendant, a prior arrest which resulted in a disposition of supervision which was successfully completed.

The Appellate Court, Fourth District, held in *People v. Calvert* that a trial court not properly consider, in sentencing a defendant, a finding of guilt on an earlier charge where the defendant had been given a disposition of supervision and had successfully completed the supervision. (100 Ill. App. 3d 510, 511, 426 N.E.2d 1218.) The court

relied on an Illinois statute which provides, *inter alia*, that "[d]ischarge and dismissal upon a successful conclusion of a disposition of supervision shall be deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—3.1(f).) Additionally, the court cited *People v. Wunnenberg* (1981), 85 Ill. 2d 188, 421 N.E.2d 905, in which our supreme court held that a set-aside prior conviction of probation under the Federal Youth Corrections Act (18 U.S.C. sec. 5005 *et seq.* (1964)) could not be considered as an aggravating factor in a State sentencing hearing.

We disagree with the holding in *Calvert* and decline to follow it for the following reasons. A close reading of the supreme court's opinion in *People v. Wunnenberg*, cited by the appellate court in *Calvert*, reveals that its holding was based upon a review of cases and the underlying purpose of the Federal Youth Corrections Act that a set-aside conviction under that Act should not have subsequent repercussions, either of a criminal or noncriminal nature, for a youthful offender. (85 Ill. 2d 188, 194-95, 421 N.E.2d 905.) Thus, the narrow issue decided in *Wunnenberg* was whether the trial court properly considered the defendant's prior conviction under the Federal Youth Corrections Act as an aggravating factor in sentencing when the prior conviction had been set aside. We do not read the relevant Illinois statutes as prohibiting under the facts present in this case the consideration in a sentencing hearing of a prior disposition of supervision successfully completed.

Two Illinois statutes are pertinent to the issue here. Section 5—6—3.1(f) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—3.1(f)) states:

> "Discharge and dismissal upon a successful conclusion of a disposition of supervision shall be deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime. Two years after the discharge and dismissal under this Section a person may have his record of arrest expunged as may be provided by law. However, any defendant placed on supervision before January 1, 1980, may move for expungement of his arrest record, as provided by law, at any time after discharge and dismissal under this Section."

The expungement provision referred to in section 5—6—3.1(f) is contained in section 5 of "An Act in relation to criminal identification and investigation" (Ill. Rev. Stat. 1979, ch. 38, par. 206—5), and the

portion thereof pertinent to the issue involved here is as follows:

"All photographs, finger prints or other records of identification so taken shall, upon the acquittal of a person charged with the crime, or, upon his being released without being convicted, be returned to him. Whenever a person, not having previously been convicted of any criminal offense or municipal ordinance violation, charged with a violation of a municipal ordinance or a felony or misdemeanor, is acquitted or released without being convicted, the Chief Judge of the circuit wherein the charge was brought, or any judge of that circuit designated by the Chief Judge, may upon verified petition of the defendant order the record of arrest and the records of the circuit court relating to such arrest expunged from the official records of the arresting authority and the records of the clerk of the circuit court."

■ It is clear under section 5 that expungement of records of the circuit court relating to an arrest which does not result in a conviction as in the case of a disposition of supervision successfully completed is not automatic, but is initiated by verified petition and may be granted in the discretion of the judge. (Ill. Rev. Stat. 1979, ch. 38, par. 206—5; see *Young v. Keefe* (1978), 64 Ill. App. 3d 824, 381 N.E.2d 1047.) In the instant case, the presentence report does not indicate that any of the supervision dispositions have been expunged as prescribed by statute, nor does the defendant so argue. More importantly, however, the defendant here is not eligible to have his record of six dispositions of supervision expunged even if successfully completed, since he was convicted of a misdemeanor offense for which he received a sentence of one year conditional discharge and one day in the House of Corrections prior to five of the supervision dispositions. Section 5 unequivocally limits eligibility for expungement to "a person, not having previously been convicted of any criminal offense or municipal ordinance violation ***." (Ill. Rev. Stat. 1981, ch. 38, par. 206—5.) Since this provision refers to convictions previous to a petition to expunge, the defendant was, therefore, ineligible to have any of his records expunged after his first conviction. See *Young v. Keefe*.

The important question which remains is whether the provision in section 5—6—3.1(f) that "[d]ischarge and dismissal upon a successful conclusion of a disposition of supervision shall be deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime" itself precludes the trial court's consideration of the supervision dispositions in the sentencing hearing.

■ Defendant has not cited us any legislative history for section 5—6—3.1(f) nor any express language therein which evinces a purpose to exclude a supervision disposition from a trial court's consideration at a sentencing hearing when a defendant has such a supervision disposition which cannot be expunged because of a prior conviction. Unlike the Federal Youth Corrections Act analyzed in *People v. Wunnenberg* (1981), 85 Ill. 2d 188, 421 N.E.2d 905, section 5—6—3.1(f) is not an expungement provision or its equivalent. Expungement is contained in section 5 of "An Act in relation to criminal identification and investigation." The express benefits bestowed under section 5—6—3.1(f) to a person successfully concluding a disposition of supervision are discharge "without adjudication of guilt" and discharge not termed as "a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." The "disqualifications or disabilities imposed by law upon conviction of a crime" refer to loss of certain rights such as the right to hold public office (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—5), to vote (Ill. Rev. Stat. 1981, ch. 46, par. 3—5), to possess a firearm (Ill. Rev. Stat. 1981, ch. 38, par. 24—3.1), or to practice medicine (Ill. Rev. Stat. 1981, ch. 111, par. 4433(3)). Further, this court has held that the provisions of section 5—6—3.1(f) did not prevent use of an admission of guilt to driving while under the influence of intoxicating liquor (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501), for which the defendant received supervision and where the charge was subsequently dismissed, as an admission in a collateral implied consent hearing. (*People v. Powell* (1982), 107 Ill. App. 3d 418, 419-20, 437 N.E.2d 1258.) Accordingly, we do not read the aforementioned language in section 5—6—3.1(f) so broadly as to prohibit consideration by a trial judge at a sentencing hearing of a disposition of supervision successfully completed.

The fact that a disposition of supervision successfully completed is not an adjudication of guilt also does not render such information at a sentencing hearing improper. In *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344, our supreme court stated:

"Whether a defendant had been prosecuted and convicted for other misconduct, proof of which is offered at a sentencing hearing, is not, in our judgment, controlling as to its admissibility. More important are the questions of relevancy and accuracy of the information submitted. Those questions are, of course, initially determined by the trial judge in the exercise of an informed discretion. Where, as here, that information indicates defendant solicited another to commit criminal offenses, and comes in the form of sworn testimony by the party solicited,

presented in open court and subject to cross-examination, its admission by the trial judge is not an abuse of discretion. The conduct testified to was relevant to a determination of a proper sentence in that it bore upon the likelihood or unlikelihood that defendant would commit other offenses; it appeared trustworthy; defendant had the opportunity to face and cross-examine the witness; and the accuracy of the information was not challenged. While trial judges should be cautious in admitting such proof and sensitive to the possibilities of prejudice to defendant if inaccurate information is considered, we believe that a trial judge may, under circumstances such as those here, properly receive proof of criminal conduct for which no prosecution and conviction ensued." 88 Ill. 2d 482, 498-99, 431 N.E.2d 344.

It is obvious that a previous disposition of supervision may be helpful to a trial judge in determining an appropriate sentence. As this court stated in *People v. Berger* (1982), 109 Ill. App. 3d 1054, 441 N.E.2d 915, the cases give trial judges wide latitude in receiving evidence relative to sentencing. (109 Ill. App. 3d 1054, 1070, 441 N.E.2d 915.) In the case at hand, the defendant's prior supervision dispositions along with his four convictions for other misdemeanors were important to the trial judge in imposing an additional jail sentence as a condition of probation, as it appropriately should have. In other cases, a single prior supervision disposition successfully completed may weigh in a defendant's favor. The important considerations are relevancy and accuracy of the information. We conclude that a disposition of supervision successfully completed but not expunged according to law, is relevant and a proper consideration for the trial judge at a sentencing hearing.

Defendant has not challenged at trial or on appeal the accuracy or authenticity of the supervision dispositions contained in the presentence report or this method of presenting that information to the trial court, and we need not address this procedure. (See *People v. Meeks* (1980), 81 Ill. 2d 524, 533, 411 N.E.2d 9.) Nonetheless, such information presented in a presentence report appears trustworthy absent any objection by the defendant.

■■■ Thus, we conclude that under the facts here the trial court properly considered at the sentencing hearing the defendant's prior dispositions of supervision successfully completed. While the record reveals that the trial court also mentioned three arrests without disposition, occurring after the crime for which he was convicted, which were included in the presentence report, defendant has not specifically raised this in his appeal and this point will not be considered.

(See *People v. Johnson* (1981), 96 Ill. App. 3d 1123, 422 N.E.2d 19.) Considering defendant's four prior convictions and his numerous opportunities on supervision, we believe the additional arrests were only cumulative and do not affect the sentence imposed.

We have reviewed the record and find that the sentences imposed on both defendants were not an abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

For the foregoing reasons, the judgments of conviction of the circuit court of Du Page County are affirmed.

Affirmed.

LINDBERG and VAN DEUSEN, JJ., concur.