THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
MICHAEL S. HUBBARD, Defendant-Appellee.

Second District   No. 2—87—0252

Opinion filed June 14, 1988.

WOODWARD, J., dissenting.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers, John X. Breslin, and Gary F. Gnidovec, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

James G. Groat, of Louis E. Neuendorf & Associates, of Sandwich, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Michael S. Hubbard, was convicted of driving while under the influence of alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(2)). The trial court granted defendant's post-trial motion, vacated his conviction, and ordered a new trial. Defendant's subsequent motion to suppress evidence was granted, and the State appeals from that order. On appeal, the State contends that defendant's conviction should be reinstated because the trial court lacked jurisdiction to consider his post-trial motion. The State further contends that the trial court's ruling on the motion to suppress was against the manifest weight of the evidence. We reverse.

The parties stipulated to the following facts. On May 18, 1986, at approximately 6:45 p.m., Michael Davis, a deputy with the Kendall County sheriff's department, was on routine patrol along Route 34 in Plano. Davis observed an automobile heading eastbound near the curb at a speed of about five miles per hour. There were two males in the

car. The car windows were rolled down, and the passenger was motioning out the window and yelling at two juvenile females who were walking down the street. Davis observed the females wave to the automobile occupants in a manner indicating that they wished to be left alone. Believing the occupants of the car were harassing the two girls, Davis activated his overhead lights and stopped the car after it turned onto Hughes Street. Defendant, who was the driver of the car, had a strong odor of alcohol emanating from his breath. Defendant was placed under arrest after he failed certain field sobriety tests. Davis did not speak to or stop the two girls who were walking along Route 34. Defendant testified that he did not violate any traffic laws or drive in an erratic manner prior to the stop. Defendant further stated that he and his companion were not harassing the girls walking along the street. Rather, his companion was merely trying to get their attention because he thought he knew one of them. The girls were in fact neighbors of defendant's companion.

Prior to the trial, defendant moved to suppress evidence of the investigatory stop which resulted in his arrest. That motion was denied. On September 8, 1986, the trial court found defendant guilty. On October 6, 1986, the court sentenced defendant to a one-year term of probation and imposed a $600 fine. Defendant filed a post-trial motion on October 22, 1986, in which he alleged, *inter alia*, that his motion to suppress filed prior to trial should have been granted because the investigatory stop made by Davis was improper. The trial court granted defendant's post-trial motion on November 21, 1986. The trial court did not enter a written order disposing of the post-trial motion, and no transcript of proceedings is available for the hearing on that motion. However, the trial court record sheet contains an entry for November 21, 1986, vacating the conviction and granting a new trial. The entry further states that the "[p]olice acted cautiously, but [the] stop should be quashed." The State's subsequent motion to reconsider the decision on defendant's post-trial motion was denied on January 8, 1987. Thereafter, defendant again moved to suppress evidence of the stop. The court granted defendant's motion on February 19, 1987. The State filed its notice of appeal from that order on March 18, 1987.

Initially, we address defendant's contention that the appeal should be dismissed. We disagree.

■ Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)) states as follows:

> "In criminal cases the State may appeal only from an order
> or judgment the substantive effect of which results in dismiss-

ing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence."

Subject to exceptions not applicable to this case, Supreme Court Rule 606(b) (107 Ill. 2d R. 606(b)) provides that the notice of appeal in a criminal case must be filed within 30 days of the entry of the order or judgment from which the appeal is taken. This 30-day deadline applies to appeals from interlocutory orders. *People v. Van Matre* (1988), 164 Ill. App. 3d 201, 203; *People v. McBride* (1983), 114 Ill. App. 3d 75, 79.

█ It is undisputed that the State filed its notice of appeal within 30 days of the February 19, 1987, order granting defendant's motion to suppress. However, defendant submits that the State should have appealed within 30 days of the November 21, 1986, order vacating his conviction and granting him a new trial since that order also suppressed all evidence obtained as a result of the investigatory stop. We do not interpret the court's decision on that date as an order suppressing evidence. The record sheet entry for November 21, 1986, indicates that the trial court *granted defendant a new trial.* Although that entry further states that the "[p]olice acted cautiously, but [the] stop should be quashed," the trial court did not do so at that time. Our conclusion is supported by the court's use of the phrase "should be quashed" and the subsequent conduct of both defendant and the trial court. Defendant made a separate motion to suppress *after* November 21, 1986, and prior to the new trial. The trial court entertained that motion to suppress and granted it on February 19, 1987. Thus, the actions of the parties as well as the trial court indicate that the order of November 21, 1986, only granted a new trial and did not *actually suppress the evidence.* Since the November 21, 1986, order did not have the effect of suppressing the stop, the State could not have appealed from that order. The State's appeal from the February 19, 1987, order suppressing the evidence was timely and is properly before this court.

█ █ The first issue raised by the State is whether the trial court lacked jurisdiction to consider defendant's post-trial motion. Section 116—1(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 116—1(b)) requires that post-trial motions be filed within 30 days of entry of a finding or the return of the verdict. Failure to file such motions within that period is a proper ground for denial. (*People v. Gray* (1981), 96 Ill. App. 3d 757, 762.) Defendant

was found guilty by the trial court on September 8, 1986. Defendant was sentenced on that conviction on October 6, 1986. He did not file his post-trial motion until October 21, 1986. Thus, it is clear from the record that defendant failed to file his post-trial motion within 30 days of the finding of guilty.

Nonetheless, there is case law which holds that a defendant's failure to file his post-trial motion within 30 days of the verdict is not fatal to the court's jurisdiction. (See *People v. Eddington* (1984), 129 Ill. App. 3d 745, 749; *People v. Talach* (1983), 114 Ill. App. 3d 813, 818.) In *Talach*, the court held that there is no jurisdictional bar to consideration of a post-trial motion made prior to sentencing even if the 30-day deadline is not met. (114 Ill. App. at 818.) Unlike *Talach*, the post-trial motion in the instant action was not filed prior to sentencing, but rather after sentencing. However, a similar factual situation was presented in *People v. Eddington* (1984), 129 Ill. App. 3d 745. In *Eddington*, the defendant filed his post-trial motion after sentencing. (129 Ill. App. 3d at 748.) In rejecting the State's argument challenging the trial court's jurisdiction, the court held that since the State participated in proceedings on the post-trial motion, the trial court had jurisdiction under the revestment doctrine. (129 Ill. App. 3d at 751.) The revestment doctrine allows litigants to revest a court with jurisdiction after the 30-day period following final judgment during which post-trial motions must ordinarily be filed. (129 Ill. App. 3d at 751.) The revestment doctrine is applicable where the parties actively participate in proceedings which are inconsistent with the merits of the prior judgment. (129 Ill. App. 3d at 751; see also *People v. Kaeding* (1983), 98 Ill. 2d 237, 241.) We note that in both *Eddington* and *Talach* the *trial court* participated in and encouraged the late filing of the post-trial motion by incorrectly advising the defendant regarding the time for filing his motion. (See *Eddington*, 129 Ill. App. 3d at 748-49; *Talach*, 114 Ill. App. 3d at 818-19.) Although we question the wisdom of holding that the parties through their conduct may revest a court with jurisdiction after such jurisdiction has been lost, we see a certain amount of validity in applying the revestment doctrine where *the court* perpetuates the jurisdictional error.

In the instant action, the record does not contain any statements or other evidence indicating that the trial court perpetuated defendant's filing of a late post-trial motion. Although we are loathe to apply the revestment doctrine in a case in which the trial court has not perpetuated the litigant's conduct delaying the filing of a post-trial motion, we note that our supreme court has breathed new life into the doctrine without making a similar distinction. (See *Kaeding*, 98

Ill. 2d at 241.) Thus, we are constrained to apply that doctrine to this case. We note that the record is silent on whether the State raised any objection to the timeliness of defendant's post-trial motion. As the appellant, the State has the burden of providing a complete record of the proceedings in the trial court, and any doubts which arise from the incompleteness of the record must be resolved against the State. (See *Pecora Oil Co. v. Johnson* (1987), 156 Ill. App. 3d 521, 523.) Accordingly, we find *Eddington* applicable to the case at bar and conclude that the trial court had jurisdiction to consider defendant's motion. See *Eddington*, 129 Ill. App. 3d at 751.

The State next contends that the trial court's ruling on the motion to suppress was against the manifest weight of the evidence. We agree.

■ A reviewing court will not disturb the trial court's ruling on a motion to suppress unless the ruling is against the manifest weight of the evidence. (*People v. Garman* (1984), 123 Ill. App. 3d 682, 685.) It is well settled that stopping an automobile and detaining its occupants constitutes a seizure under the fourth and fourteenth amendments and such a seizure is justified only if it meets the requirement of reasonableness. (*Delaware v. Prouse* (1979), 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667, 99 S. Ct. 1391, 1396.) In justifying such an action, a police officer must point to specific and articulable facts, which taken together, with rational inferences from those facts, reasonably warrant the intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1880.) This standard has been codified in Illinois by a statutory provision which states that an identified police officer "may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense." (Ill. Rev. Stat. 1985, ch. 38, par. 107-14.) In determining the reasonableness of a police officer's conduct, the facts must be considered not from the perspective of hindsight but rather as they would have been viewed by a reasonable police officer confronting the same facts under the same circumstances. *People v. Smithers* (1980), 83 Ill. 2d 430, 439.

■ In the instant action, Davis testified that he had not observed any traffic violations. Nonetheless, his testimony did establish a reasonable and adequate basis for an investigatory stop under the standards discussed above. Davis testified that he observed defendant's car proceeding at a slow speed near the curb. Davis observed the passenger yelling and motioning at two juvenile females. Davis further observed the juveniles motion to the automobile in a manner indicating

that they wished to be left alone. From these observations Davis determined that the occupants of the automobile were harassing the juveniles. Viewing these facts from the objective of a reasonable police officer, we agree with the State that Davis would have been remiss had he not initiated the stop. (See *Smithers*, 83 Ill. 2d at 439.) Juveniles have become an increasingly common target of crime, with each day bringing more stories of lost, kidnapped, or brutalized children. Schools, playgrounds, and neighborhoods are frequent haunts of pedophiliacs and other deviates seeking to coax and abduct children from their familiar surroundings, never to be seen again except on the exteriors of tollway booths, milk cartons, and shopping bags. Police officers are not insulated but rather highly sensitive to this troubling commentary on our times. Simply because the juveniles in the instant action turned out to be neighbors of defendant's companion does not render the stop unreasonable.

The trial court and defendants nonetheless rely on *People v. Garman* (1984), 123 Ill. App. 3d 682, as a basis for suppressing evidence of the stop. In *Garman*, two juvenile females flagged down a police officer and excitedly told him that a man driving a car had just yelled something at them and asked them to come over to the man's car. (123 Ill. App. 3d at 683.) The officer stopped the car and, after observing the defendant's actions and speech, arrested him on charges of driving while under the influence of alcohol. (123 Ill. App. 3d at 683-84.) The State appealed from the trial court's decision quashing the defendant's arrest, and the Appellate Court for the Third District affirmed. (123 Ill. App. 3d at 684-85.) We need not engage in an academic exercise to distinguish *Garman* from the facts of the instant action. Rather, we note that, in *Garman*, the appellate majority concluded from the record before it that the trial court's finding was not manifestly erroneous. (123 Ill. App. 3d at 685.) Based on the facts as set forth in that opinion, we do not find the majority's conclusion in that regard supportable and agree instead with the well-reasoned dissent of Justice Heiple. (See 123 Ill. App. 3d at 685.) Applying the same standard of review as applied in the instant action, Justice Heiple reviewed the facts presented in *Garman* from the perspective of those versed in the field of law enforcement. (123 Ill. App. 3d at 686.) Justice Heiple concluded that the conduct of the defendant could not be taken lightly and compelled an investigation by the officer. (123 Ill. App. 3d at 686.) We find the circumstances in the case at bar even more compelling in that Davis actually witnessed defendant's conduct, the conduct of the female juveniles, and made reasonable inferences from those observations.

Accordingly, we reverse the decision of the trial court suppressing the evidence of the stop. This case is remanded to the trial court for a new trial as required by that court's order of November 21, 1986.

Reversed and remanded.

DUNN, J., concurs.

JUSTICE WOODWARD, dissenting:

I respectfully dissent from the majority's decision. The issue before this court is whether the decision of the trial judge to suppress the evidence derived from stopping the defendant was against the manifest weight of the evidence.

As stated, the testimony of Officer Davis and the defendant was stipulated to by the parties. Davis admitted that he had not observed any traffic violations, and the defendant testified that he did not violate any traffic law. Davis stated that he observed the passenger in the defendant's car yelling and motioning to the two juvenile females. Davis interpreted the gestures of the young women to mean that they wanted to be left alone; however, this was merely his conclusion. Davis had no idea what the passenger was saying to the young women, and therefore, he could not be certain that verbal harassment was taking place. The passenger did not get out of the defendant's car, and there was no testimony that the defendant or his passenger was making threatening gestures but only that they were making gestures. There was no evidence indicating that the defendant and his passenger would continue to follow the two girls as they walked along. The evidence was that defendant's passenger was merely trying to get the attention of the two girls because he thought he knew one of them. The two girls were, in fact, neighbors of the defendant's passenger.

On the basis of the above and foregoing evidence, the trial judge concluded that the police stop of the defendant was not warranted. There is no evidence to indicate that the young women were in any danger except the conclusion of Officer Davis. The trial judge by sustaining the motion to suppress determined that the conclusion of Officer Davis that the young women were in danger was not supported by the facts and circumstances prior to and at the time of the stop. The trial judge was in the best position to observe the conduct of the witnesses, to determine their credibility, and to weigh their testimony; yet the majority finds that the decision of the trial judge is against the manifest weight of the evidence based on the conclusion of Davis

that the defendant's passenger was "harassing the juveniles." The trial judge had the right to disbelieve or disregard this conclusion as this was part of his duty in fairness to the State and the defendant.

I cannot agree with the majority that comparing the facts of the instant case to those of *People v. Garman* (1984), 123 Ill. App. 3d 682, is an academic exercise. Clearly, the facts of the present case are far more favorable to this defendant than *Garman* facts were to that defendant. In *Garman*, two girls, whose ages were approximately 9 and 10, flagged down a patrol car at 10 p.m. in October (it was clearly dark, and there was no evidence that the street was well traveled). The two girls excitedly told the police officer that a man driving a car had yelled something to them and asked them to come over to his car. They were not sure what he had said, but they were frightened by him.

Unlike the facts in the *Garman* case, the incident in this case occurred in broad daylight (6:45 p.m. daylight savings time) on May 18. The young women were older than the complainants in the *Garman* case. Officer Davis did *not* stop or speak to the girls who continued to walk along Route 34. Defendant testified that he and his companion were not "harassing" the girls walking along the street but that his passenger was merely trying to get their attention because he thought he knew one of them. The majority states the girls were, in fact, neighbors of the defendant's companion.

In response to the words uttered by defendant's passenger, the girls showed no fear but merely motioned indicating that they didn't want anything to do with defendant's passenger. The girls did not seek police protection, and the police officer did not know the identity of the girls or what had been said to them.

Since two members of the *Garman* court determined that the facts did not give rise to a reasonable police stop, it is only logical that the facts of this case do not possibly support a legitimate stop by a police officer. From the foregoing facts, the trial court could reasonably conclude that the stop of defendant's car was without probable cause and that the evidence arising therefrom should be suppressed. Accordingly, I would affirm the trial court's decision.