THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT L. HIGHTOWER, Defendant-Appellant.
Third District   No. 3—85—0162

Opinion filed October 30, 1985.

6

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

The defendant-appellant, Robert L. Hightower, was found guilty by a jury of the offenses of driving under the influence of intoxicating liquor and driving with a blood-alcohol content over .10. (Ill. Rev. Stat. 1983, ch. 95½, pars. 11—501(a)(2), (a)(1), respectively.) The court entered judgment on the latter finding of guilt and sentenced the defendant to 364 days' imprisonment in the Peoria County jail, a $1,000 fine, and costs. The defendant appeals from his sentence.

The evidence at the defendant's trial established that at approximately 10:30 p.m. on July 14, 1984, the car the defendant was driving struck and injured the pedestrian victim, Sharon Ford. At the trial, the defendant testified that he had been drinking alcohol prior to the accident. The breath analysis test to which the defendant submitted shortly after the accident showed his blood-alcohol concentration at .27.

At the sentencing hearing, Ford testified in aggravation as to the extent of her injuries and expenses related to the accident. Additionally, the court granted, over the defendant's objection, the State's request that the court take judicial notice of its file showing the defendant's prior plea of guilty to the offense of driving under the influence of intoxicating liquor. In granting the State's request, the court observed these facts: that following his December 28, 1982, plea of guilty, the defendant was placed on supervision and in the Dri-Roads program; that the defendant successfully completed Dri-Roads; and that the case was dismissed without entry of a conviction.

The defendant testified in mitigation. His testimony addressed his post-accident participation in Alcoholics Anonymous and his extreme remorse over Ford's injuries. The defendant also testified to his current and previous state of employment.

The court sentenced the defendant to the maximum jail time and fine for his Class A misdemeanor conviction. The defendant argues on

appeal that his sentence was excessive and erroneously influenced by the court's reliance on two improper factors in aggravation.

The first factor which the defendant addresses is his 1982 disposition of supervision. The defendant relies on *People v. Wunnenberg* (1981), 85 Ill. 2d 188, 421 N.E.2d 905, and *People v. Calvert* (1981), 100 Ill. App. 3d 510, 426 N.E.2d 1218, in arguing that the court erroneously considered the 1982 disposition.

In *Wunnenberg*, the supreme court held it was improper for the sentencing court to consider the defendant's prior conviction which had been set aside under section 5021(b) of the Federal Youth Corrections Act. (18 U.S.C. sec. 5021(b) (1964).) The *Wunnenberg* court considered the legislative purpose of the Federal Youth Corrections Act and concluded that the conviction set aside under that Act should not later burden the offender with either criminal or noncriminal consequences. Accordingly, the court held the conviction should not be considered even remotely as an aggravating factor in sentencing.

In *Calvert*, the Fourth District addressed the question of whether the trial court properly considered in sentencing that the defendant previously was found guilty of battery when the defendant subsequently had successfully completed a corresponding term of supervision under subsections 5—6—3.1(e) and (f) of the Unified Code of Corrections (the Act) (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—6—3.1(e), (f)). The *Calvert* court found a direct analogy between section 5—6—3.1(f) of the Act and section 5021(b) of the Federal Youth Corrections Act. It held, on the strength of *Wunnenberg*, that during sentencing, the trial court improperly considered the battery charge which was followed by successful completion of supervision.

The State argues that the sentencing court in the instant cause properly considered the defendant's prior disposition of supervision. The State relies primarily on *People v. Talach* (1983), 114 Ill. App. 3d 813, 448 N.E.2d 638. In *Talach*, the Second District rejected the *Calvert* court's finding that Illinois' law on supervision found in section 5—6—3.1(f) is analogous to section 5021(b) of the Federal Youth Corrections Act. It reasoned that unlike the Federal act, the Illinois supervision provision is not an expungement provision or its equivalent. The *Talach* court went on to conclude that a disposition of supervision successfully completed, but not expunged, is a relevant and proper consideration for a sentencing hearing.

Under section 5—6—1(c) of the Act, a court may enter an order for supervision of a misdemeanant pleading guilty or stipulating to facts supporting a charge or finding of guilt against him. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—1(c).) Under section 5—6—3.1(e) of

the Act, at the conclusion of the period of supervision, if the court determines that the defendant has successfully complied with all the conditions of supervision, it shall discharge the defendant and dismiss the charges. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—3.1(e).) Subsection 5—6—3.1(f) of the Act then provides that "[d]ischarge and dismissal upon a successful conclusion of a disposition of supervision shall be deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—3.1(f).) Subsection (f) goes on to set out a post-discharge waiting period after which a defendant may move for expungement of his arrest. Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—3.1(f).

We agree that section 5—6—3.1(f) is not analogous to section 5021(b) of the Federal Youth Correction Act. Section 5021(b) has been interpreted by some courts to require automatic expungement of the offender's entire record. (See, *e.g.*, *United States v. Doe* (D.R.I. 1980), 496 F. Supp. 650, 653; and *United States v. Henderson* (D.N.J. 1979), 482 F. Supp. 234, 244.) Illinois' section 5—6—3.1(f), on the contrary, specifically sets out a period during which a defendant must wait before seeking expungement.

■ Under the legislative design before us, upon a defendant's successful completion of his term of supervision, the defendant is discharged; the relevant charges are dismissed; the defendant no longer risks conviction or attendant disabilities on the dismissed charge; and the defendant may look forward to possible expungement of his record. Ill. Rev. Stat. 1983, ch. 38, pars. 1005—6—3.1(e), (f).

We believe that the *Talach* case was properly decided. There, the court concluded that the "disqualifications and disabilities imposed by law upon conviction of a crime" described in section 6—3.1(f) did not include the right to be completely free of the consequences of one's past criminal conduct. It interpreted this phrase to include only those rights and privileges statutorily denied to a convicted offender. *People v. Talach* (1983), 114 Ill. App. 3d 813, 826.

■■ This interpretation is harmonious with legislative intent. Had the legislature desired the result achieved in *Calvert* and argued for by defendant, it could have provided either for automatic expungement or, better yet, explicitly precluded from consideration at sentencing any conduct for which defendant had served a successful term of supervision. Because no such restrictions were provided, every reasonable presumption should be entertained in favor of the trial court's discretion to consider all factors relevant to an appropriate sentencing determination. In considering instances of past misconduct, in the ab-

sence of specific statutory constraints, the court has broad discretion so long as adequate proof of such misconduct is presented. *People v. La Pointe* (1982), 88 Ill. 2d 482, 431 N.E.2d 344.

■ Our concurrence with the *Talach* resolution is consistent with contrary resolutions of similar matters. In *People v. Wunnenberg* (1980), 87 Ill. App. 3d 32, 409 N.E.2d 101, a prior conviction overturned on appeal or in collateral proceedings could not be considered by the court in sentencing a defendant for a subsequent offense. In *People v. Jones* (1976), 36 Ill. App. 3d 491, 344 N.E.2d 40, evidence of a prior arrest was not admissible without more in a later sentencing proceeding. On the surface, these cases would seem to support defendant's position since the supervision statute calls for a dismissal of charges upon successful completion of a term. There is a critical distinction, however. A mere arrest or a reversed conviction results in nothing more than the unproven allegations of the State. To the contrary, a prerequisite to a sentence of supervision is that defendant either enter a plea of guilty or stipulate to the factual basis of the charges against him (Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—1(c)). Hence, a court in a subsequent sentencing proceeding has before it the uncontradicted fact that defendant committed an offense. This is a qualitatively different state of affairs than bare allegations of the State.

Beyond the questions of legislative intent and technical limitations on the power of a sentencing court to consider prior misconduct, there is something pervasively counterintuitive in the defendant's argument. The supervision statute mandates a certain status for both defendant and his criminal record. It does not require the court to erase history. The legislature in its infinite and mysterious wisdom could have so provided, but it did not. Hence, we are constrained to leave the matter of prior supervisions to the sound discretion of the sentencing judge.

■ We also must consider the other factor which the defendant argues was improperly considered by the sentencing court: that the defendant's conduct caused serious harm. The defendant argues that there was no sufficient nexus between the defendant's alcohol concentration and the victim Ford's injuries. At the guilty phase of the proceedings, the defendant objected to Ford's account of the accident as irrelevant to the defendant's guilt of the charged motor vehicle offenses. However, in the sentencing proceedings, the defendant made no objection to Ford's testimony as to the extent of her injury in the accident. We find he has waived his objection for the first time on appeal. *People v. Massarella* (1979), 80 Ill. App. 3d 552, 400 N.E.2d 436.

Accordingly, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

BARRY, J., concurs.

JUSTICE STOUDER, dissenting:

I respectfully dissent from the result reached by my colleagues. I believe the case should be remanded for reconsideration of the sentence because I believe it was improper to consider the defendant's previous conviction as an aggravating factor in the determination of an appropriate sentence. As pointed out by the majority, *People v. Calvert* (1981), 100 Ill. App. 3d 510, 426 N.E.2d 1218, and *People v. Talach* (1983), 114 Ill. App. 3d 813, 448 N.E.2d 638, have adopted irreconcilable positions on the effect to be given a conviction thereafter dismissed upon the successful completion of supervision. *Talach*, the later case, declines to follow *Calvert* because, according to the statute, the conviction is dismissed and not expunged or expungable upon the successful completion of supervision.

Supervision as a disposition in a misdemeanor case is of recent origin. Because supervision has been added to or grafted upon an existing structure, its characteristics and effects may not fit neatly into the pre-existing scheme. There can be little doubt of the general intent and purpose of the legislation to provide that where supervision is granted and successfully completed, the usual and customary incidents of a conviction are to be eliminated. Notwithstanding the purposes and intent of the statute, the majority holds that all of the consequences of a conviction are not eliminated unless either specified in the statute or unless the proceeding is expunged.

It seems to me the plain language of the statute which requires dismissal of the charges in mandatory language upon successful completion of supervision means what it says. Section 5—6—3.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—6—3.1(e), (f)) provides:

"(e) At the conclusion of the period of supervision, if the court determines that the defendant has successfully complied with all of the conditions of supervision, the court shall discharge the defendant and enter a judgment dismissing the charges.

(f) Discharge and dismissal upon a successful conclusion of a disposition of supervision shall be deemed without adjudication

of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime. Two years after the discharge and dismissal under this Section, unless such conviction was for violation of Section 11—501 of The Illinois Vehicle Code or a similar provision of a local ordinance in which case it shall be 5 years after discharge and dismissal, a person may have his record of arrest expunged as may be provided by law. However, any defendant placed on supervision before January 1, 1980, may move for expungement of his arrest record, as provided by law, at any time after discharge and dismissal under this Section."

From these quoted sections of the statute the legislature has declared the judge shall "enter a judgment dismissing the charges." Furthermore, dismissal "shall be deemed without adjudication of guilt ***." If there is a judgment dismissing the charges and no adjudication of guilt, thereafter I do not see how it can be any more clearly said there is no conviction. Neither the opinion in *Talach* nor of the majority explains how the statute can be given its plain and ordinary meaning, *i.e.*, no adjudication of guilt and yet permit the conviction to have the same vitality in relation to sentencing as if it were a conviction.

The majority concedes that charges of criminal conduct without conviction are irrelevant in another criminal proceeding (*People v. Jones* (1976), 36 Ill. App. 3d 491, 344 N.E.2d 40) but suggests the rule is inapplicable here because of a difference in the quality of the proceeding. Again, referring to the applicable statutory provisions, I find nothing in the statute which in any way suggests that the dismissal described in sections (e) and (f) is intended to be any different than any other dismissal.

The legislature can, and I believe has done so, eliminate the consequence of a conviction by its statutory provisions without including a provision for expungement. Even if this were not the case, sections (e) and (f), when considered together, do provide for a plan of expungement, albeit one which does not authorize expungement at the time of dismissal but one which provides for expungement upon the lapse of time and application by defendant. Once the supervision has been successfully completed and the dismissal entered, there are no other conditions precedent set forth in the statute other than the expiration of time and the application for the expungement. Delaying expungement may prohibit or adversely affect the grant of supervision for a subsequent offense.

If, as the majority holds, a conviction which has been dismissed

still has viability until the proceedings are expunged, it seems to me this places the defendant in a needlessly confusing position. If the defendant is asked on an application such as one to take a bar exam or for employment whether he has been convicted of a crime, how is he to answer the question? If a dismissal of charges eliminates an adjudication of guilt as the statute provides, then I think the answer should be no. If the answer is to be "yes" or "maybe," then I believe the intent of the statute has been defeated.