DAVID A. BEARD, Petitioner-Appellant, v. SPRINT SPECTRUM, LP, d/b/a Sprint PCS, *et al.*, Respondents-Appellees.

Third District   No. 3—04—0547

Opinion filed August 10, 2005.—Rehearing denied August 30, 2005.

R. Daniel Lyons (argued), of R. Daniel Lyons & Associates, of Downers Grove, for petitioner.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Mary Patricia Kerns (argued) and Erik G. Light, Assistant Attorneys General, of counsel), for respondents Department of Human Rights and Chief Legal Counsel.

Edward M. Graham (argued) and Gregory J. Schroedter, both of Bell, Boyd & Lloyd, L.L.C., of Chicago, and Chris R. Pace, of Sprint Law Department, of Overland Park, Kansas, for respondents Sprint Spectrum, L.P., and Sprint United Management Co.

JUSTICE BARRY delivered the opinion of the court:

Petitioner, David A. Beard, appeals the decision of the chief legal counsel of the Illinois Department of Human Rights (Department) affirming the Department's dismissal of his employment discrimination complaint filed pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1—101 *et seq.* (West 2002)). We affirm.

## I. FACTS

On September 24, 2002, petitioner applied for a job with Sprint. The employment application contained the following question:

"Have you ever been charged with a crime (including misdemeanors but not minor traffic violations) which resulted in a conviction?"

The application further stated:

"For the purposes of this question, convictions also include guilty pleas (including No Contest pleas), suspended impositions of sentence, adjudications deferred or withheld (except in Montana), diversion programs (except in California or Ohio) (beyond the probationary period), first offender programs (except in Massachusetts and Georgia), non-prosecutions with leave to reinstate, pre-trial interventions (beyond the probationary period), stays of imposition to vacate and dismiss (beyond the probationary period), and stet dockets (beyond the probationary period)."

In response to this question, petitioner answered "no." The application also stated:

"The existence of a criminal record will not necessarily disqualify you for employment consideration. Each conviction will be evaluated on its own merits with respect to time, circumstances and seriousness, in relation to the job for which you are applying. However, failure to disclose such information may result in disqualification of your application or termination of employment."

Above the signature line it stated:

"I certify that any and all statements which I have set forth in this application are true and correct to the best of my knowledge. I also recognize that any misstatement or omission of facts called for in this application, in any supplement thereto, or in any other company records supplied or completed by me will be sufficient grounds for not employing me or may subject me to discharge in the event that I am hired."

Petitioner also authorized Sprint to procure an investigative

consumer report on him. The authorization stated that petitioner understood that this report may contain information regarding his criminal conviction history, driving record history, character, general reputation and personal characteristics from public record sources and from interviews with former employers, references and others.

Sprint offered petitioner a job on October 11, 2002, contingent upon successful completion of the drug and background screens. Petitioner's employment began on October 14, 2002. On November 11, 2002, ChoicePoint Investigation initiated an investigation on behalf of Sprint. The background investigation revealed that petitioner was found guilty on a public morals charge in July 1998 and received a $25 fine and one month of court supervision which was satisfactorily terminated in August 1998. Sprint terminated petitioner's employment on November 20, 2002. On November 25, 2002, Sprint notified petitioner that "[i]n evaluating [his] application for employment, [Sprint] obtained the enclosed consumer report from ChoicePoint Investigation Agency" and that "[t]his notice is being provided to [petitioner] because an adverse employment decision may be based, in whole or in part, on this report." On November 26, 2002, Sprint sent petitioner a letter telling him Sprint had decided to no longer employ him.

On November 29, 2002, petitioner filed a charge of discrimination with the Illinois Department of Human Rights. Petitioner alleged that Sprint had fired him based upon a review of his arrest records that did not result in a conviction. Sprint responded that there was a discrepancy between petitioner's employment application and the pre-employment background investigation that was authorized by petitioner. It stated that petitioner "was terminated for failing to reveal on his job application that he was convicted (as the term 'conviction' is defined by Sprint's job application) of a misdemeanor." It further stated that "it never, at any time, solicited or received any information from Complainant or any other party regarding Complainant's arrest records, if any." Finally, Sprint stated that the "sole and exclusive reason that it terminated [petitioner] was his failure to disclose a prior conviction in response to a clearly worded question on the job application."

On January 5, 2004, the Department of Human Rights dismissed petitioner's complaint for lack of substantial evidence. In its investigation report the Department stated:

"A finding of lack of substantial evidence is recommended because:

1. Documented evidence indicates that Respondent defined guilty plea as a conviction throughout the application.

2. Documented evidence shows that Complainant indicated on his employment application that he had never pled guilty to a crime.

3. Complainant concedes that he pled guilty to a crime.

4. Documented evidence shows that offers of employment are contingent upon successful completion of background screens.

5. Documented evidence shows that Complainant was discharged because he did not successfully complete Respondent's background screen."

On June 21, 2004, the chief legal counsel for the Illinois Department of Human Rights denied petitioner's request for review of the Department's dismissal for lack of substantial evidence. The chief legal counsel concluded in part:

"The investigation revealed that on November 26, 2002, Respondents terminated Complainant's employment for failing to follow instructions on the employment application and disclose a criminal conviction as defined in the employment application. The investigation did not reveal, and Complainant did not provide, any evidence that Respondents had any knowledge that he was arrested or used that information to discharge him. Further, the investigation did not reveal, and Complainant did not provide, any evidence that a similarly situated employee who did not have an arrest record, was not discharged under similar circumstances. Therefore, there is no evidence that Respondent discharged Complainant because of his arrest record."

On July 16, 2004, petitioner appealed.

## II. ANALYSIS

■ The chief legal counsel's order reviewing the dismissal is a final and appealable order. 775 ILCS 5/7—101.1(A) (West 1998). The petitioner then may seek review of the chief legal counsel's order in the appellate court. 775 ILCS 5/8—111(A)(1) (West 1998). The standard of review is whether the Department's chief legal counsel abused her discretion. *Anderson v. Chief Legal Counsel*, 334 Ill. App. 3d 630, 634, 778 N.E.2d 258, 261 (2002).

■ Section 2—103 of the Act prohibits an employer from inquiring into or using an arrest record as grounds to refuse to hire or discharge someone.

"§ 2—103. Arrest Record.

(A) Unless otherwise authorized by law, it is a civil rights violation for any employer, employment agency or labor organization to inquire into or to use the fact of an arrest or criminal history record information ordered expunged, sealed or impounded under Section 5 of the Criminal Identification Act as a basis to refuse to hire, to

segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment. This Section does not prohibit a State agency, unit of local government or school district, or private organization from utilizing conviction information obtained from the Department of State Police under the provisions of Section 3 of the Criminal Identification Act in evaluating the qualifications and character of an employee or a prospective employee." 775 ILCS 5/2—103(A) (West 2002).

Petitioner contends that Sprint violated the Illinois Human Rights Act by inquiring into his arrest record. Sprint asserts that it discharged petitioner because he lied on his application, not because of his arrest record, which it contends it never solicited. Sprint's employment application asked whether the applicant had ever been charged with a crime that resulted in a conviction. The application went on to define "conviction" to include guilty pleas. Although petitioner had pled guilty to a public morals charge and received court supervision, he responded "no" to the question regarding convictions. Petitioner contends that Sprint should be precluded from defining the term "conviction" in its application as including dispositions resulting in court supervision because that is akin to inquiring into an arrest record. Petitioner relies upon section 5—6—3.1 of the Unified Code of Corrections, which provides in part:

"(e) At the conclusion of the period of supervision, if the court determines that the defendant has successfully complied with all of the conditions of supervision, the court shall discharge the defendant and enter a judgment dismissing the charges.

(f) Discharge and dismissal upon a successful conclusion of a disposition of supervision shall be deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime. Two years after the discharge and dismissal under this Section *** a person may have his record of arrest sealed or expunged as may be provided by law." 730 ILCS 5/5—6—3.1(e), (f) (West 2002).

Based on this language, petitioner concludes that his guilty plea and sentence of court supervision cannot be considered a conviction. However, this argument has no support in the law.

In *People v. Hightower*, 138 Ill. App. 3d 5, 485 N.E.2d 452 (1985), this court stated:

"We believe that the *Talach* case was properly decided. There, the court concluded that the 'disqualifications and disabilities imposed by law upon conviction of a crime' described in section

6—3.1(f) did not include the right to be completely free of the consequences of one's past criminal conduct. It interpreted this phrase to include only those rights and privileges statutorily denied to a convicted offender." *People v. Hightower*, 138 Ill. App. 3d 5, 9, 485 N.E.2d 452, 455, (1985), citing *People v. Talach*, 114 Ill. App. 3d 813, 826, 448 N.E.2d 638, 647 (1983).

Clearly, petitioner being denied private employment by Sprint does not fall into the category of "disqualifications and disabilities imposed by law" to which the legislature was referring.

Moreover, section 2—103(b) states:

"(B) The prohibition against the use of the fact of an arrest contained in this Section shall not be construed to prohibit an employer, employment agency, or labor organization from obtaining or using other information which indicates that a person actually engaged in the conduct for which he or she was arrested." 775 ILCS 5/2—103(b) (West 2002).

■ The Illinois legislature has not prohibited employers from defining "conviction" as Sprint did. In enacting section 2—103(A), the intent of the legislature was to prevent inquiry into mere charges or allegations of criminal behavior but to allow inquiry where criminal conduct has been proven. The background investigation conducted by ChoicePoint indicated that the circuit court criminal record indices for Will, Du Page, and Cook Counties were searched. In that petitioner never had his record expunged, the court record still reflected the conviction. Nothing on the report reveals arrest information. The Department's finding of lack of substantial evidence is supported by the record. Therefore, the Department's chief legal counsel did not abuse her discretion by sustaining the Department's dismissal of petitioner's complaint.

## III. CONCLUSION

For the reasons stated, we affirm the order of the chief legal counsel of the Illinois Department of Human Rights dismissing petitioner's complaint.

Affirmed.

HOLDRIDGE and SCHMIDT, JJ., concur.