2020 IL App (1st) 190879-U

No. 1-19-0879

Order filed September 24, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ANDRE KILPATRICK, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | No. 2015 CN 1392 |
| DEPARTMENT OF HUMAN RIGHTS, and | ) | |
| URBAN PREP ACADEMIES, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE HALL delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Human Rights Commission did not abuse its discretion by sustaining the dismissal of petitioner's charge of employment discrimination for lack of substantial evidence.

¶ 2    Petitioner Andre Kilpatrick appeals from a final order entered by the Illinois Human Rights

Commission (Commission) sustaining the Illinois Department of Human Rights' (Department)

dismissal of his charge of employment discrimination by his former employer, respondent Urban

Prep Academies (Urban Prep), brought under the Illinois Human Rights Act (Act) (775 ILCS 5/1-101, *et seq.* (West 2014)). Petitioner alleged Urban Prep discharged him from his employment as a teacher because of its knowledge of his arrest record in violation of the Act (775 ILCS 5/2-103(A) (West 2014)). The Department dismissed his charge for lack of substantial evidence. The Commission sustained the Department's dismissal and petitioner appealed. We affirm.

¶ 3    Petitioner was employed as a teacher at Urban Prep from July 30, 2014, to September 30, 2014, when Urban Prep discharged him after running a mandatory criminal background check. Petitioner filed a charge of employment discrimination with the Department.

¶ 4    In his charge of discrimination, petitioner alleged that, on September 30, 2014, after running his criminal background check, Urban Prep discharged him based upon information obtained from his arrest record in violation of the Act.[1] Petitioner alleged his job performance met Urban Prep's expectations, and the reason Urban Prep gave him for his discharge was his failure to pass the background check.

¶ 5    Petitioner's charge was investigated by the Department, and the investigator issued a report after interviewing petitioner, Urban Prep's chief academic officer Lionel Allen Jr., Urban Prep's director of human resources Tanya Robinson, and Urban Prep's principal Ronald Bryant. The parties agreed that Urban Prep is an all-male charter high school, and petitioner was hired for the

---

[1] At the time relevant here, section 2-103(A) of the Act provided: "Unless otherwise authorized by law, it is a civil rights violation for any employer *** to inquire into or to use the fact of an arrest *** as a basis to refuse to hire *** or to act with respect to *** discharge." 775 ILCS 5/2-103(A) (West 2014). Effective January 1, 2020, section 2-103(A) was amended to clarify that "arrest record" means, as relevant here, "an arrest not leading to a conviction." See Public Act 101-565, § 5, eff. Jan. 1, 2020.

position of teacher on July 30, 2014. The parties also agreed that, on September 30, 2014, petitioner was discharged by Bryant, and the reason given was because petitioner could not pass the mandatory background check.

¶ 6 Petitioner claimed that, despite the stated reason for his discharge being that he did not pass the mandatory criminal background check, Urban Prep's decision to discharge him was actually based on information obtained from his arrest record.

¶ 7 Petitioner told the investigator he was hired as a science teacher for Urban Prep on July 30, 2014, and was aware he would have to pass Urban Prep's criminal background check. He told the investigator that in the beginning of August 2014, he had spoken with Benjamin Blakney, Urban Prep's senior director of operations, and informed him about his criminal background, including both arrests and convictions. Blakney told petitioner that if a "hit" or conviction came back on his background check, then an investigation would be conducted to determine if his employment would be continued. According to petitioner, Blakney told him the initial determination was made by Chicago Public Schools (CPS), and Urban Prep makes the final employment decision. Blakney told petitioner that, if his convictions were on "the list of enumerated offenses," then that would automatically prevent him from working for Urban Prep, otherwise the decision was discretionary. Petitioner stated his convictions were not on the list of enumerated offenses.

¶ 8 Petitioner stated that, on September 30, 2014, Bryant told him that the district office recommended that petitioner be discharged "because of an unsuccessful" criminal background check. Bryant showed petitioner his background check, which was "correct" and included both convictions and arrests. This background check included "the sexual offenses he was arrested for," as well as his convictions for resisting a peace officer and aggravated battery of a peace officer.

Petitioner received no documents at that time, and was not informed what in his background precluded him from working for Urban Prep.

¶ 9     In the beginning of October 2014, petitioner spoke with Blakney about his discharge. Blakney told him that CPS "makes the determination" and it is up to Urban Prep to decide whether to continue employment. Blakney told petitioner his record was "so egregious" that Urban Prep would have had to "get an allowance from CPS" in order for petitioner to work for Urban Prep. Petitioner did not ask what in his record was "so egregious." Blakney told petitioner his discharge was not performance based. Petitioner subsequently requested and received a copy of his file from Urban Prep, which included his criminal background check. He believed the background check he received was not the same one he was shown by Bryant during his discharge. He thought his arrests were removed from the background check, but was not sure.

¶ 10     Petitioner asserted that, when he subsequently contacted the Illinois State Police, he was told it appeared his background check had been run twice, and something might have been added or removed. He also stated that Johnny D., a teacher with an arrest record, was terminated the same day as petitioner for failing the mandatory criminal background check and that Steven W., a counselor with a felony forgery conviction, continued to work for Urban Prep.[2]

¶ 11     Petitioner provided the investigator with "a list of Enumerated Offenses in Illinois School Code *** that automatically prevent an individual from working in a school in the state of Illinois" which the investigator incorporated as Exhibit B to his report.[3]

---

[2] For privacy reasons, given the references to these employees' arrests, we use their last initials.

[3] This list was comprised of the offenses enumerated in section 21B-80 of Illinois School Code (105 ILCS 5/21B-80 (West 2014)). Section 21B-80 sets for the convictions which serve "as grounds for disqualification for licensure or suspension or revocation" of an educator's license. *Id.*

¶ 12     In response, Principal Bryant, Chief Academic Officer Allen, and Director of Human Resources Robinson, all offered evidence on behalf of Urban Prep.

¶ 13     Bryant stated he hired petitioner and informed him of the mandatory background check. Bryant stated that he discharged petitioner on September 30, 2014, and told him that due to his criminal history, Urban Prep was severing ties with him.

¶ 14     Allen told the investigator that on September 30, 2014, he learned petitioner was placed on the CPS "do not hire list because of his convictions" and petitioner was discharged.

¶ 15     Allen stated that all background checks are performed through CPS, and Teresa Diaz, a compliance officer for CPS, informed Urban Prep that petitioner was placed on the do not hire list. CPS provided this information to Urban Prep as guidance for its employment decision regarding petitioner. Allen stated that any background determined "serious" is reviewed with CPS being contacted about the employment decision as well.

¶ 16     Allen stated that petitioner's background revealed he had two counts of resisting a peace officer and one count of aggravated battery of a peace officer for which he served jail time. According to Allen, the count of aggravated battery of a peace officer was "the most alarming" because it was a "violent felony conviction." Allen stated that Urban Prep's decision to discharge petitioner was based on the nature of his convictions, "which were violent convictions and for which jail time was served."

¶ 17     Allen stated that CPS uses the list of enumerated offenses to disqualify individuals seeking employment. According to Allen, individuals who have had "hits" on their background checks remained employed by Urban Prep, and the employment decision is made on a case-by-case basis depending on the nature of the offense. Allen stated Urban Prep discharged Johnny D. on the same

day as petitioner when his background check contained a "hit" for possession of a controlled substance.

¶ 18    Robinson stated that when background checks come back with a "hit" or conviction, Urban Prep reviews those checks to see what the "hit" is for, and if it is necessary to contact "someone in compliance" to determine if the individual can remain employed. According to Robinson, the list of offenses is not exhaustive and Urban Prep has discretion to make an employment decision based on other convictions that may not be included on the list of enumerated offenses. Robinson also stated petitioner's arrests were on the background check Urban Prep received and provided to petitioner. Robinson stated that "as far as she [knew]," the background check was only processed one time.

¶ 19    Urban Prep provided the investigator with, *inter alia*, relevant sections of Urban Prep's Employee Handbook, Acknowledgement of Employee Handbook form signed by petitioner, and petitioner's criminal history record. These documents were incorporated as exhibits in the investigator's report.

¶ 20    In rebuttal, petitioner stated the copy of the background he received from Urban Prep only included his convictions, not his entire criminal history. According to petitioner, his convictions were not on the list of enumerated offenses, but his arrests were, and Johnny D.'s conviction was on the list of enumerated offenses. Petitioner stated that an investigation should have been conducted before his discharge, instead of Urban Prep "upholding the decision made by CPS." Petitioner stated other individuals with "hits" were employed by Urban Prep.

¶ 21    The investigator recommended the Department find a lack of substantial evidence regarding petitioner's claim. The investigator found no evidence that Urban Prep discharged

petitioner because of his arrest record. Rather, petitioner was discharged because he failed the mandatory background check, which came back with "violent felony convictions" that led to his discharge. Further, the investigator found Urban Prep discharged another teacher, Johnny D., for failing the mandatory background check, but continued to employ individuals with convictions, such as Steven W., and made each employment decision on a case-by-case basis depending on the nature of the offense.

¶ 22    The Department dismissed petitioner's charge. Petitioner filed a request for review with the Commission in which he argued his complaint should not have been dismissed because "the evidence substantiate[d] [his] claim" that his arrest record, coupled with a conviction not on the list of enumerated offenses, were the factors erroneously used to terminate his employment. He repeated his argument that, because neither of his convictions for aggravated battery to a peace officer and resisting arrest appeared on the list of enumerated offenses, he could not "be automatically disqualified and placed on the 'do not hire' list by CPS based upon those convictions." He claimed the criminal sexual assault arrest on his criminal record was "enough for the untrained eye" to automatically disqualify him from employment, and both CPS and Urban Prep failed to conduct an investigation to determine whether the arrest was inactive or had been disposed of. He also argued Urban Prep could not overrule CPS's decision regarding the do not hire list, and Bryant told him "the district office recommended we sever ties." Petitioner concluded that, since his convictions were not on the list of enumerated offenses but his arrest was, his discharge necessarily must have been wrongfully based on the arrest.

¶ 23    The Department responded to petitioner's request for review, reiterating the findings from its investigation. It specified there was no evidence that Urban Prep discharged petitioner because

of his arrest record rather than his failing the mandatory background check. Further, Urban Prep employed several individuals who had arrest records at the time of their hire, and had discharged employee Johnny D. on the same day as petitioner because he also failed a mandatory background check. The Department also argued that, even if petitioner could establish a *prima facie* case of arrest record discrimination, Urban Prep had met its burden to articulate a non-discriminatory reason for its employment action, namely that petitioner had convictions for violent felonies for which he served jail time. The Department argued petitioner provided no evidence that Urban Prep's decision was made in bad faith, especially given that another employee was discharged on the same day for having a criminal conviction on his record.

¶ 24    On March 26, 2019, after reviewing petitioner's request and the Department's response, the Commission sustained the Department's dismissal of petitioner's charge for lack of substantial evidence. The Commission found that Urban Prep articulated a non-discriminatory reason for its actions, namely petitioner failed a mandatory criminal background check, and there was no evidence of pretext. Urban Prep was entitled to make its employment decision based on its reasonable belief of the facts surrounding the situation, and "[t]he correctness of the reason is not important as long as there was a good faith belief by Urban Prep in its decision." Petitioner provided no evidence that Urban Prep made its decision in bad faith, and no evidence of any comments regarding petitioner's arrest record or any of the underlying allegations for which petitioner was arrested. Finding petitioner presented no additional evidence that would warrant a reversal of the Department's original determination, the Commission sustained the Department's dismissal of the charge. On April 30, 2019, petitioner filed a petition for administrative review of the Commission's decision with this court.

¶ 25     Petitioner argues that the Commission denied him his due process rights by disregarding documentary evidence submitted by the parties, simply accepting "whole-heartedly" the Department's findings. Petitioner also argues the Commission erred in sustaining the dismissal where the record on appeal establishes "unequivocally" that CPS used the fact that petitioner was arrested for "aggravated sexual assault," an enumerated offense but one for which he was not convicted, to place him on its "do not hire" list, and that Urban Prep adopted CPS's position in choosing to reconsider petitioner's hire and terminate his employment.[4] He argues the record establishes that, "but for" CPS's consideration of his arrest for the enumerated offense, petitioner would not have been terminated and "would have continued to work for Urban Prep." We have jurisdiction to review the final order of the Commission pursuant to § 5/8-111(B) of the Act (775 ILCS 5/8-111(B) (West 2018)) and Illinois Supreme Court Rule 335 (eff. Oct. 15, 2015).

¶ 26     As an initial matter, we note petitioner's brief does not comply with Illinois Supreme Court Rules 341(h)(9) (eff. May 25, 2018), and 342 (eff. Oct. 1, 2019), which require an appellant's opening brief to contain an appendix. Rule 342 enumerates the contents of the appendix, which must include a table of contents, the judgment appealed from, any opinion, memorandum, or findings of fact filed or entered by the administrative agency that are the basis of the appeal, the notice of appeal, and a complete table of contents with page references, of the record on appeal. Ill. S. Ct. R. 342. We may strike a brief and dismiss the appeal for failure to comply with the rules. *Marzano v. Dept. of Emp't. Sec.*, 339 Ill. App. 3d 858, 861 (2003). Nevertheless, as it is clear

---

[4] For the first time on appeal, petitioner asserts that, in 1998, when he was a college student, he was "wrongfully accused, arrested, charged and subsequently acquitted of aggravated sexual assault [*sic*] by a jury of his peers." Petitioner did not present this evidence to the Department or the Commission, and we therefore will not consider it here. See *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 50; 735 ILCS 5/3-110 (West 2014).

petitioner challenges the Commission's final order, and the merits of the appeal can be readily ascertained from the short record on appeal, we choose to reach those merits. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2011).

¶ 27    It is a civil rights violation under the Act to discharge an employee on the basis of unlawful discrimination. 775 ILCS 5/2-102(A) (West 2018). Discrimination based upon an individual's arrest record, or upon criminal history record information ordered expunged, sealed or impounded, is unlawful under the Act. 775 ILCS 5/2-103(A) (West 2018); see *Beard v. Sprint Spectrum, LP*, 359 Ill. App. 3d 315, 320 (2005) (in enacting section 2–103(A), "the intent of the legislature was to prevent inquiry into mere charges or allegations of criminal behavior but to allow inquiry where criminal conduct has been proven").

¶ 28    Where an aggrieved individual brings a charge under the Act, the Department investigates to determine whether the allegations are supported by substantial evidence. 775 ILCS 5/7A-102(C)(1) (West 2018). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2018). If the Department finds no substantial evidence supporting the charge, the charge is dismissed. 775 ILCS 5/7A-102(D)(3) (West 2018). The charging party may then commence an action in the circuit court or, as petitioner did here, file with the Commission a request for review of the dismissal. 775 ILCS 5/7A-102 (D)(3) (West 2018).

¶ 29    A final order of the Commission is judicially reviewed by the Appellate Court under the abuse of discretion standard of review. 775 ILCS 5/8-111(B)(1) (West 2018); *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, the court should not

disturb the Commission's decision unless it is arbitrary or capricious. *Young*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise. *Owens v. Dep't. of Human Rights*, 403 Ill. App. 3d 899, 917 (2010).

¶ 30    We review the final order of the Commission, not the Department decision. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018). A reviewing court may not reweigh the evidence or substitute its judgment for that of the Commission, and an abuse of discretion exists where no reasonable person could agree with the position of the lower court. *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 31    The record shows petitioner provided no direct evidence of discrimination. Therefore, we must analyze his claim using the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Zaderaka*, 131 Ill. 2d at 178-79; *Young*, 2012 IL App (1st) 112204, ¶ 34. Under this test, first the petitioner bears the burden to establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34. If the petitioner establishes a *prima facie* case of discrimination, a rebuttable presumption of unlawful discrimination arises. *Id*., ¶ 36. In order to rebut the presumption, the respondent must articulate a legitimate, nondiscriminatory reason for its decision. *Id*. If the respondent does so, the burden shifts back to the petitioner to prove the respondent's reason was a pretext for unlawful discrimination. *Id*. The ultimate burden remains with petitioner at all times. *Zaderaka*, 131 Ill. 2d at 179.

¶ 32    To establish a *prima facie* case of employment discrimination under the Act, the employee bears the burden of showing by a preponderance of the evidence that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *Owens v. Dept of Human Rights*, 403 Ill. App. 3d 899, 919 (2010). At that point, the burden shifts to the employer to articulate, not prove, a legitimate, non-discriminatory reason for the adverse employment decision. *Zaderaka*, 131 Ill. 2d at 179. Finally, if the employer meets its burden, the employee must prove by a preponderance of the evidence that the employer's articulated reason was not legitimate and, in fact, a pretext for unlawful discrimination. *Id*.  For the following reasons, we find the Commission did not abuse its discretion in sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence.

¶ 33    In its final order, the Commission did not address whether defendant made a *prima facie* case of employment discrimination, skipping directly to the second stage of the analysis: whether Urban Prep articulated a non-discriminatory reason for its actions with no evidence of pretext. Similarly, the parties do not address whether defendant made a *prima facie* case of employment discrimination, proceeding directly to the issue of whether Urban Prep's employment decision showed evidence of pretext. Accordingly, as it is undisputed that petitioner presented a *prima facie* case, we will do the same.

¶ 34    Urban Prep asserted it discharged petitioner because of the nature of the convictions in his background report. Discharge based on the fact of a criminal conviction is not a violation of the Act. 775 ILCS 5/2-103(B) (West 2018) ("The prohibition against the use of the fact of an arrest contained in this Section shall not be construed to prohibit an employer *** from obtaining or

using other information which indicates that a person actually engaged in the conduct for which he or she was arrested."); see *C.R.M. v. Chief Legal Counsel of Illinois Dept. of Human Rights*, 372 Ill. App. 3d 730, 734 (2007) ("Because the criminal convictions were not sealed, expunged, or impounded, section 2-103(A) did not bar the City from considering them during the hiring process"). Therefore, as the Commission found, Urban Prep articulated a legitimate, non-discriminatory reason for petitioner's discharge.

¶ 35    Petitioner did not meet his burden to prove Urban Prep's stated reason was pretext for unlawful discrimination. He argues the record contains evidence CPS does not have discretion in placing individuals on its "do not hire" list, and instead must solely rely upon the list of enumerated offenses, which does not contain his convictions. Petitioner contends CPS, and subsequently Urban Prep, must have relied upon his sexual assault arrest to discharge him, rather than the convictions in his mandatory background check, because while his convictions are not among the enumerated offenses listed in Illinois School Code that automatically prevent an individual from working in a school in the state of Illinois (see 105 ILCS 5/21B-80 (West 2018)), his arrest was for a listed offense. Petitioner also argues the evidence shows CPS and Urban Prep likely discharged him for his arrest rather than his convictions because his arrest for sexual assault is a much more serious offense than his convictions for aggravated battery of a peace officer and resisting arrest.

¶ 36    Petitioner's entire argument is pure speculation, and "[a] petitioner's discrimination charge consisting of mere speculation and conjecture does not constitute substantial evidence." *Folbert v. Dep't of Human Rights*, 303 Ill. App. 3d 13, 25 (1999). No evidence supports petitioner's assertion that the only individuals CPS could place on its "do not hire" list were those with convictions on the enumerated offenses list. Allen testified CPS used the list of enumerated offenses to disqualify

individuals seeking employment and that Diaz, a CPS compliance officer, told Robinson that petitioner was placed on the CPS "do not hire" list because of his convictions. But there was no testimony regarding how CPS made this decision, let alone that CPS had no discretion in the matter. Further, Robinson testified the list was "not exhaustive," from which it follows that CPS still has discretion regarding placing teachers on the "do not hire" list.

¶ 37    Moreover, even if CPS incorrectly placed petitioner on the "do not hire" list because of his arrest, petitioner provides no evidence other than his own speculation that Urban Prep simply adopted CPS's decision and discharged him due to the arrest. Allen testified that the CPS "do not hire" list provides "guidance" for Urban Prep's employment decision. Indeed, Robinson told the investigator that Urban Prep has discretion to make employment decisions based on other convictions that may not be included in the list of enumerated offenses. Allen testified Urban Prep conducts its own investigation and review of the results of background checks determined to be "serious." Allen testified these decisions are made on a case-by-case basis. Thus, the evidence shows that, regardless of CPS's reasons for placing petitioner on its "do not hire" list, Urban Prep had the authority to discharge him based on the nature of the convictions from his background check.

¶ 38    Even if Urban Prep saw the sexual assault arrest in petitioner's background check, petitioner has provided no evidence that it relied upon his arrest rather than the convictions for "violent" offenses in making the adverse employment decision. See *C.R.M.*, 372 Ill. App. 3d at 734 (holding that, while the petitioner's background check contained information regarding his arrests, nothing in the record indicated the City relied on the arrest information, rather than the petitioner's convictions, in deciding not to employ him). Although petitioner was informed that he

was being discharged due to his "egregious" record, he did not ask what in his record was particularly egregious, and only speculates in hindsight on the reason for his discharge.

¶ 39    In contrast, Urban Prep presented evidence that it had discretion in reviewing convictions outside of the list of enumerated offenses, made the discharge decisions on a case-by-case basis, and discharged defendant because of the violent nature of his convictions, which is a legitimate, non-discriminatory reason. Because Petitioner has presented no evidence that Urban Prep's reason for discharging him was pretextual beyond his unsupported speculations, we find the Commission did not abuse its discretion in affirming the dismissal of petitioner's charge for lack of substantial evidence.

¶ 40    As a final matter, petitioner argues the Commission committed clear error where it only considered "select parts of the evidence made available in the Department's report but made sweeping findings and conclusions with respect to the whole." He claims the Commission relied solely upon the Department's findings from its investigative report and did not review the exhibits petitioner presented to the Department in making its ruling, in violation of his due process rights. Petitioner notes that none of the nine exhibits to the Department's investigative report were included in the record on appeal "because they were not reviewed or considered by the Commission." Our review of the record confirms that the exhibits to the Department's report were not made a part of the record on appeal. However, nothing in the record shows the Commission did not consider the exhibits. Further, beyond his vague, single sentence contention that his due process rights were violated, petitioner does not support this claim with argument or legal authority and has therefore forfeited the issue pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018). *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010).

¶ 41 For the foregoing reasons, the Commission's March 26, 2019, order sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence is affirmed.

¶ 42 Affirmed.